UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cheryl Smith,

      Plaintiff,

v.                          Case No. 05-72789

Aluminum Blanking Co., Inc.,         Honorable Sean F. Cox

      Defendant.

_____/

## OPINION & ORDER
### DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this action on July 15, 2005, claiming that her former employer terminated her in retaliation for taking leave under the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq*. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The Court heard oral argument on January 11, 2007. For the reasons below, Defendant's Motion for Summary Judgment shall be DENIED.

### BACKGROUND

Plaintiff Cheryl Smith ("Plaintiff") began her employment with Defendant Aluminum Blanking Co., Inc. ("Defendant") in 1993 as a Production Scheduler in the Production Control Department.

Plaintiff's Employment History

Plaintiff's direct supervisor was Judy Henderson ("Henderson"), the Production Manager. Documents submitted by Plaintiff show that her performance evaluations were positive. Plaintiff's 2002 performance valuation rated Plaintiff in nine categories. She was rated

1

"outstanding" in three categories, "very good" in five categories, "good" in one category, and received no ratings as "below average" or "unsatisfactory." (Ex. 6 to Pl.'s Br.) As to her working relationships, Plaintiff's 2002 evaluation was "very good" and noted "gets along with everybody." It further noted "An asset to Production Control including covering for Manager when necessary." (*Id*.).

In Plaintiff's 2003 evaluation, she received an overall score of 1.5 – midway between "Exceeds Expectations" and "Meets Expectations" and received a performance raise of 4 ½ %. (Ex. 7 to Pl.'s Br.) That evaluation noted "Very professional with all customers. Needs to work on professionalism when working w/ certain fellow associates" but also noted "Getting better at effective writing skills and interpersonal skills." (*Id*.).

Plaintiff's 2004 evaluation, which was completed on October 4, 2004, also rated Plaintiff midway between "Exceeds Expectations" and "Meets Expectations." (Ex. 8 to Pl.'s Br.). Plaintiff received one rating of below expectations, in communication skills, where her evaluator noted "The perception needs improvement." Plaintiff again received a 4 ½ % performance raise.

Plaintiff testified that during her employment with Defendant, she never received any formal discipline and never received any informal oral or written warnings. (Pl.'s Dep., attached as Ex. 1 to Pl.'s Br., at 111).

Defendant's Claimed Reorganization:

In early 2004, Defendant decided to separate shipping and receiving from production control for business reasons. (Pearson Dep., attached to Def.'s Br. as Ex. B, at 20). Prior to that time, the Production Control Department consisted of both 1) taking orders, and 2) shipping/receiving. After the departments had been separated, Operations Manager Dave

Pearson ("Pearson") testified that he and Chief Operations Officer Rick Hole ("Hole") decided to eliminate one position from Production Control because there were "too many people in the Production Control department for the amount of work that was being done."  (Pearson Dep. at 46).

Defendant submits that according to the deposition testimony of Pearson, the "decision to eliminate a position in the Production Control Department was made in November/December 2004."  (Def.'s Br. at 8).  Pearson testified that he and Hole made the decision to select Plaintiff for termination and that the decision was based on "attitude" and "working with others." (Pearson Dep. at 51-52).  Defendant claims that although the final decision to terminate Plaintiff's position was made by the beginning of December 2004, Defendant did not terminate Plaintiff at that time because it "didn't want to do anything during the Christmas holidays." (Pearson Dep., Ex. B to Def.'s Br., at 122).

Plaintiff's Leave and Termination:

It is undisputed that Plaintiff went on approved vacation from December 17, 2004, through January 3, 2005.  (*See* Def.'s Br. at 2).   Prior to going on her vacation, Plaintiff had sought medical treatment for cough and congestion.  (Ex. 10 to Pl.'s Br.).  Plaintiff's condition deteriorated during her vacation and on January 3, 2005, Plaintiff sought treatment from Dr. Joseph Trollman, who diagnosed Plaintiff with acute walking pneumonia.  (Ex. 11 to Pl.'s Br.)

Plaintiff states that although she planned to return to work the next day, she had an adverse reaction to the medication prescribed by her doctor.  She testified that the Codeine she was prescribed "knocked her out" until the evening of January 4, 2005.  Plaintiff contacted her supervisor on the morning of January 5, 2005, and advised of her condition and that she may

need more time off to recover.  (Pl.'s Dep. at 53-54).  She advised that she was going to see her

doctor again and that he may put her out on sick leave.  (*Id.*).  Plaintiff testified that prior to this

illness, she had never called in sick during her 12 years of employment with Defendant.  (Pl.'s

Dep. at 53).

Plaintiff saw Dr. Trollman again on January 6, 2005, at which time he told Plaintiff that

she could not work.  (*Id.* at 56-57).  Dr. Trollman indicated that Plaintiff could not work "from 1-

3-05 THROUGH 1-17-2005."  (Ex. 11 to Pl.'s Br.).

On January 18, 2005, Pearson prepared the following written notes relating to Plaintiff's

leave and her termination:

> 1/18/05 – Meetings on Cheryl Smith
>
> Talked with Judy Henderson on Jan 12-05 about what Cheryl's responsibilities are
> - (her) job is looking after Pechiney account - which is 15% of the work in
> Production Control.  Cheryl has being [sic] off work since Dec 17/04 - til Jan 21-
> 05 a total of 5 wks which 2 wks were Holidays and 3 wks sick with a cold.  Had
> talked with her manager Judy Henderson and Cheryl did not call in to report that
> she was not coming to work on Jan 4-05 and did not call til Jan 5-05 - late
> afternoon to tell her she would be off sick til Jan 17-05 as per Doctors Report.
> She was to report to work on Jan 17/05 as per her Doctors Report and did not call
> or show up.  She phoned Human Resource at 4:11 pm or 4:15 pm Jan 17/05.  Had
> meeting with Lisa Coole and Judy Henderson on Jan 18/05 at 11:15 am that I
> wanted a letter sent to Cheryl today - Jan 18/05 that she was terminated due to cut
> backs and that the Production Control Dept was running fine with 2 people and
> Judy.  Also her attitude since Sept 04 - has being [sic] terrible and we talked to her
> on numerous occasions and she has not improving [sic].  This go's [sic] back a
> number of years.
> Dave Pearson

(Ex. 13 to Pl.'s Br.).  It does not appear that any termination letter was actually sent to Plaintiff

on January 18, 2005.

Plaintiff saw Dr. Trollman again on January 17, 2005, at which time he extended her sick

leave through January 23, 2005.  (Ex. 12 to Pl.'s Br.).  Plaintiff returned to work on January 24,

2005, and was terminated after she arrived to work.  The written termination notice given to

Plaintiff states:

> REASON FOR TERMINATION:
> Not properly calling in during sick time off.
> Inappropriate attitude
> Cut backs in the Department.

(Ex. 14).

Thereafter, Plaintiff filed this action.  Plaintiff's one-count complaint alleges that

Defendant terminated her employment in violation of the Family and Medical Leave Act, 29

U.S.C. §2601 *et seq*. ("the Act").

During discovery Pearson and Hole both testified that Plaintiff's termination was a

"reduction in force."  (Pearson Dep. at 100; Hole Dep. at 73).   Defendant's "Handbook for

Salaried Employees" sets forth Defendant's policy relating to reductions in force: "In the unlikely

event of a reduction in workforce, employees will be laid off based on skills and abilities as well

as seniority.  If the skills and abilities of two employees are equal, seniority will be the

determining factor in the layoff decision."  (Ex. 18 to Pl.'s Br. at 25).

At the time she was selected for the reduction in force Plaintiff had the most seniority of

any employee working in Production Control. (Exs. 19 & 20 to Pl.'s Br.).   Nevertheless,

Pearson, who himself had not worked with Plaintiff (Pearson Dep. at 66), testified that before

deciding to choose Plaintiff for the reduction in force he: 1) did not consult with Plaintiff's direct

supervisor, Henderson (Pearson Dep. at 71); 2) did not review Plaintiff's performance

evaluations (*Id*. at 100); and 3) did not review the performance evaluations of the other

employees in the Production Control Department to compare them with Plaintiff's evaluations. (*Id.*).

Henderson testified that during Plaintiff's leave Pearson seemed upset that Plaintiff was out sick. (Henderson Dep. at 53). Henderson testified that Pearson's tone and actions led her to believe that. (*Id.* at 53-54). She stated that Peason was shaking his head and stating "she's probably out getting another job." (*Id.*) Henderson further testified that she was first advised that Plaintiff, her direct report, was being terminated the week before Plaintiff was expected to return from her FMLA leave,[1] and that she was surprised to hear the decision. (*Id.* at 57). Henderson testified that the decision to terminate Plaintiff was made without asking her input and that she could not recall any prior hiring or firing decisions in production control having been made wherein her input was not sought. (*Id.* at 81). She also testified that she disagreed with the decision to terminate Plaintiff. (*Id.* at 72). Plaintiff testified that Henderson also told her that Pearson had stated that Plaintiff was not calling in enough during her sick leave. (Pl.'s Dep. at 76).

On September 11, 2006, Defendant filed the instant Motion for Summary Judgment, brought pursuant to FED. R. CIV. P. 56(c).

Standard of Decision

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith*

---

[1]She testified it was sometime between the 17th and 24th of January. *Id.*

6

*Radio Corp.*, 475 U.S. 574, 587 (1986).

<u>ANALYSIS</u>

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on her discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Direct evidence is evidence that is free of inferences and that, if believed, requires a finding that "unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). It does not require the fact finder to draw any inferences to reach that conclusion. *Id*. Evidence of discrimination is not considered direct evidence unless an unlawful motivation is explicitly expressed. *Id.*

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to FMLA claims and that Plaintiff bears the burden of establishing a prima facie case. They also agree that the elements of a prima facie case for a FMLA claim are: 1) the employee engaged in a protected activity; 2) the exercise of the protected activity was known to defendant; 3) the defendant suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001). The burden of establishing prima facie case is "not onerous." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer

to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge.  If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination.  *Skrjanc, supra.*

Defendant contends that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of retaliation under the Act because the decision to eliminate the position was made over one month prior to her requesting and taking leave under the Act. Defendant further asserts that even if Plaintiff could establish a prima facie case, it has articulated a legitimate non-discriminatory reason for the discharge that cannot be rebutted by Plaintiff.

A.    Prima Facie Case

Defendant contends that Plaintiff has no direct evidence that she was terminated because she took FMLA leave and that she cannot establish a prima facie case.  Defendant does not dispute that Plaintiff engaged in a protected activity (taking FMLA leave), that Defendant was aware of that activity, or that Plaintiff suffered an adverse employment action (termination.) Rather, Defendant contends that Plaintiff cannot establish a prima facie case because Plaintiff cannot establish a causal connection between the protected activity and her discharge.

Defendant claims that Plaintiff cannot establish the requisite causal connection because Defendant made the decision to terminate Plaintiff well before she engaged in the protected activity.  Defendant submits that according to the deposition testimony of Pearson, the "decision to eliminate a position in the Production Control Department was made in November/December 2004."  (Def.'s Br. at 8).  Defendant claims that although the decision to terminate Plaintiff's position was made by the beginning of December 2004, Defendant did not

8

terminate Plaintiff until she returned from her FMLA leave in December because it "didn't want to do anything during the Christmas holidays." (Pearson Dep., Ex. B to Def.s' Br., at 122). Defendant claims that because the decision to terminate her was made prior to the time she took her leave, Plaintiff cannot establish a causal connection.

Plaintiff responds by asserting that she can meet her burden here by establishing both direct evidence of discrimination and by making a prima facie case.

As to direct evidence, Plaintiff asserts that the following constitutes "direct evidence" that one factor in Defendant's decision to discharge Plaintiff was her FMLA leave: 1) that Pearson was upset about her leave; 2) that Pearson stated Plaintiff was probably out finding another job; 3) and that Pearson said Plaintiff should be calling in more during her leave.

Plaintiff also contends that she can establish a prima facie case, including the required causal connection between her protected activity and her discharge. First, Plaintiff relies on the temporal proximity between her leave and her termination the very day she returned from her leave. She notes that in some cases, temporal proximity alone is sufficient to establish a causal connection, but submits she has additional evidence linking her termination to her FMLA leave:

- Although Defendant claims that the decision was made the beginning of December 2004, there is no credible evidence to establish that the decision to terminate Plaintiff was made prior to her leave.

- Plaintiff's Termination Notice lists, as the first reason for Plaintiff's discharge, "not properly calling in during sick time off." (Ex. 14 to Pl.'s Br.). Because Plaintiff had never called in sick prior to the incident in question, that had to refer to Plaintiff's FMLA leave.

- In his notes dated January 18, 2005, Mr. Pearson asserted Plaintiff simply had "a cold," when Defendant had been advised by a physician that Plaintiff had acute walking pneumonia, criticized her failure to call in often enough during her leave and expressed anger about Plaintiff not having called in sick on January 17, 2005, although the report

9

from Dr. Trollman indicated that Plaintiff would be off work **through** January 17, 2005. (Ex. 13 to Pl.'s Br.).

•      Henderson testified that Pearson was angry about Plaintiff being out sick and made comments questioning her illness, such as "she's probably out finding another job."

•      In executing its alleged reduction in force, Defendant did not follow its own procedures which required Defendant to select employees for reductions in force based on seniority and work performance. Pearson decided to terminate Plaintiff, who he had not worked with personally, despite her top seniority and he never even bothered to look at her performance reviews or those of her co-workers before doing so.

Plaintiffs submits that the temporal proximity, along with the above circumstantial evidence, is sufficient to establish her prima facie case.

As to direct evidence, the Court concludes that none of the evidence relied on by Plaintiff can be considered "direct evidence" under *Amini.* No unlawful motivation was explicitly expressed. Rather, the evidence Plaintiff presents requires inferences to be drawn. Accordingly, Plaintiff must establish a prima facie case with circumstantial evidence in order to withstand summary judgment.

As explained below, the Court concludes that Plaintiff has established a prima facie case of unlawful discrimination based on circumstantial evidence.

The Court rejects Defendant's argument that no causal connection can be established by Plaintiff because it is undisputed that it made a final decision to terminate Plaintiff at the beginning of December, 2004 -- before Plaintiff took her FMLA leave. Defendant bases its argument on the testimony of Pearson and Hole. Pearson and Hole, however, simply testified that *a final decision to reduce the Production Control Department by one staff member* had been made at that time – not that a final decision that *Plaintiff* would be the one Production Control staff member chosen for the reduction in force had been made at that time. Moreover, Pearson's

testimony is far from equivocal as to timing of Defendant's final decision to terminate Plaintiff.

For example, Pearson testified as follows:

> Q.     All right.  Why didn't you consult with Judy [Henderson] prior to making the decision to let Cheryl Smith go?
> . . . .
> A.     Why didn't I speak to her? Or . . .
>
> Q.     Yeah.  Why didn't you get – Well, let me ask you this: Why didn't you get her recommendation as to what should be done?
>
> A.     I did.
>
> Q.     Okay.  What did she say?
>
> A.     I don't know – remember.  But I did.  We talked about it.
>
> Q.     Did you take it into consideration?
>
> A.     Definitely.
>
> Q.     When did you consult with her?
>
> A.     Sometime after the new year.

(Pearson Dep. at 70-71).   Accordingly, the Court rejects Defendant's argument that Plaintiff cannot possibly establish a causal connection because it is undisputed that the decision was made before her leave.

Nevertheless, the Court must still determine if Plaintiff has put forth evidence to adduce a causal connection as part of her prima facie case.  "[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence." *Avery Dennison Corp.*, 104 F.3d at 861.  The Court is satisfied that Plaintiff has done so here.

11

First, the temporal proximity between the protected activity (her FMLA leave) and the adverse action (her termination) is very strong.  Pearson's notes reflect that the day after Plaintiff extended her initial FMLA he ordered that a termination letter be sent to Plaintiff, although it appears that was not done.  More importantly, Plaintiff was immediately discharged upon returning to work from her extended FMLA leave.  Such an acute temporal proximity standing alone can be sufficient to establish a causal connection.  *See, e.g., Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

In addition to the temporal proximity, Plaintiff has also produced other evidence that, with reasonable inferences, can be construed as deducing a causal connection, including:  1) Pearson's expressing anger at Plaintiff having taken sick leave; 2)  Pearson remarking that Plaintiff was "probably out getting a job"; 3) Pearson characterizing Plaintiff's illness as "a cold" when Plaintiff had submitted written documentation from her physician that she had been diagnosed with acute walking pneumonia; 4) Pearson expressing that he did not believe Plaintiff had called in enough during her leave; 5) the fact that Defendant did not follow its stated policy for reductions in force, and instead, chose Plaintiff for the reduction in force despite her higher seniority and no attempt to compare her performance evaluations with those of her co-workers or obtain the input of Plaintiff's direct supervisor; and 6) the first reason listed on Plaintiff's Termination Notice was failure to call in properly during sick time, which had to relate to her FMLA leave given that Plaintiff had never called in sick prior to her leave.

Taken collectively, the above evidence is sufficient to establish the causal connection needed for Plaintiff's prima facie case.

12

B.     Legitimate Non-Discriminatory Reason for Discharge

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge.  Once a defendant articulates a nondiscriminatory reason for the challenged action, the plaintiff bears the burden to prove by a preponderance of the evidence that the proffered explanation was a pretext for discrimination.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998).  That is, once the employer has come forward with a nondiscriminatory reason for terminating the plaintiff, the "plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation."  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment act by showing that the proffered reason 1) had no basis in fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct.  *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer*, 29 F.3d at 1084.  The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false).  With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup."  *Id*.  The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct.  *Id.*

Defendant contends that Plaintiff was terminated for a legitimate, nondiscriminatory business reason – a reduction in force that consisted of a "departmental (and company wide)

13

reorganization." (Def.'s Br. at 1).[2] Defendant claims that Plaintiff cannot meet her burden of establishing that reason is a pretext for discrimination.

In response to Defendant's proffered reason for Plaintiff's termination, Plaintiff seeks to establish pretext via the first and second kinds of showings discussed in *Manzer*. Citing *Ercegovich,* Plaintiff notes that evidence of pretext should not be viewed in isolation, but rather with an awareness that each item of pretext buttresses the others.

Plaintiff makes several arguments with respect to pretext. First, she asserts that biased statements of decision makers are evidence of pretext. She again notes that Pearson expressed anger with respect to Plaintiff's leave, made comments that she had only "a cold" when Defendant had been provided written documentation by a physician that Plaintiff had acute walking pneumonia, accused Plaintiff of improperly using her leave to find another job, and stated that she should be calling in every day during her leave. Plaintiff notes that her termination notice itself lists failure to call in during her sick leave as the first reason for her termination and argues that her leave was therefore at least one factor in Defendant's decision to terminate her.

Second, she asserts that Defendant's proffered reason, job elimination, has no basis in fact because the truth is that she was replaced – her position as a Production Scheduler was not eliminated. Prior to her termination, there were only two people with the title of Production Schedulers, Plaintiff and Dan Polkinghorne ("Polkinghorne"). Plaintiff submits evidence to

___

[2]. Although Defendant makes numerous statements implying that Plaintiff's alleged "nasty attitude" was justification for her termination, Pearson testified that Plaintiff was not let go for performance reasons – that she was let go because her job was eliminated. (Pearson Dep. at 75).

show that prior to her termination, Chris Beamer ("Beamer") worked in the Shipping Department and was only being cross-trained in production as a "back-up." (Henderson Dep. at 10-15). Plaintiff asserts that when she was terminated, Beamer assumed 100% of her duties. (*Id*.). Beamer testified that he first received the job title of Production Scheduler in January of 2005, at which time he received an hourly raise of $1.50. (Beamer Dep. at 8-14.) He was told at that time that he was assuming Plaintiff's duties. *Id.* Defendant's own records indicate that change occurred on January 24, 2005 – the same day that Plaintiff was terminated. (*See* Ex. 17 to Pl.'s Br.).

Third, Plaintiff asserts that the proffered reason has no basis in fact because Defendant did not follow its own written reduction in force procedures. The Sixth Circuit "has held that the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler*, 317 F.3d at 576 (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)(holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into "whether the employer made a reasonably informed and considered decision before taking an adverse employment action.")). In other words, the reasonableness of a business decision is critical in determining whether the proffered reason was the employer's actual motivation.

Plaintiff asserts that she was senior to, and was more qualified than, Polkingtone. Henderson testified that she was first advised that Plaintiff, her direct report, was being terminated the week before Plaintiff was expected to return from her FMLA leave and that she was surprised to hear the decision. (*Id*. at 57). Henderson testified that the decision to terminate

15

Plaintiff was made without asking her input and that she could not recall any prior hiring or firing decisions in production control having been made wherein her input was not sought. (*Id*. at 81). She also testified that she disagreed with the decision to terminate Plaintiff. (*Id*. at 72).

Defendant's own policy requires reductions in force to be made in accordance with seniority and based on an employee's skills and abilities. Nevertheless, Pearson acknowledges that the decision to terminate Plaintiff, who was the most senior person in the department and with whom he had not personally worked, was made without reviewing her performance reviews or comparing them to others. Plaintiff also notes that unlike her, Polkingtone made mistakes in his work that required verbal warnings and formal discipline. (*See* Polkingtone Dep. at 14-16). Plaintiff, on the other hand, had never received any formal discipline or informal warnings regarding her performance.

Fourth, Plaintiff claims that the proffered reason had no basis in fact because there really was no reduction in force. She asserts that Beamer was moved from Shipping to Production Control, and then Defendant hired others to replace Beamer. Hole testified that following Plaintiff's discharge, another person named "Claudia" was hired in Shipping. (Hole Dep. at 32). Pearson testified that since Plaintiff's discharge, 10 to 20 new employees have been hired.[3] (Pearson Dep. at 77). As such, she claims there truly was no "reduction in force."

Fifth, Plaintiff claims that the proffered reason has no basis in fact because the decision to discharge Plaintiff was not made, as Defendant claims, before her FMLA leave. Plaintiff again notes that the termination form lists behavior during her leave as one of the reasons for her

---

[3]Defendant acknowledges that it never attempted to "recall" Plaintiff back to work before hiring new employees.

termination.  She further notes that Pearson was angry and stated that Plaintiff was "probably out getting another job."  Plaintiff submits this behavior is inconsistent with the claim that Defendant had already decided to terminate Plaintiff prior to her leave because if that were true Pearson would not care if Plaintiff was out getting another job.

The Court concludes that Plaintiff has produced sufficient evidence of pretext that would permit a reasonable jury to conclude that Defendant's decision to terminate her was causally linked to her protected activity.

This case can easily be distinguished from *Smith v.* Aco, 368 F.Supp.2d 721 (E.D. Mich. 2005)*,* the primary case Defendant relies on.  Unlike that case, there is no undisputed evidence here to establish that a decision to terminate Plaintiff was made prior to her leave.  Rather, at best, the evidence submitted indicates that a decision to eliminate one person from the Production Control Department was made in December of 2004 – not a decision that the person to be eliminated would be Plaintiff.  In addition, unlike that case, as detailed above, there is considerable circumstantial evidence in this case that can be construed as establishing that Defendant's purported reason for terminating Plaintiff was pretextual.  Accordingly, Defendant's Motion for Summary Judgment must be denied.

17

CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that Defendant's Motion for Summary

Judgment [Docket Entry No. 14] is **DENIED**.

**IT IS SO ORDERED**.


s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 13, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 13, 2007, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager

18